**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Edgar E. SOTO–MONTERO,**
**Defendant–Appellant.**

**No. 02–3149.**

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 15, 2003.

Decided Feb. 5, 2003.

Before MANION, KANNE, and DIANE P. WOOD, Circuit Judges.

### ORDER

Edgar Soto–Montero pleaded guilty under 8 U.S.C. 1832(a) for illegally entering the United States and the district court sentenced him to 77 months in prison. At sentencing he requested a two-point downward departure under the Sentencing Guidelines based on his "cultural assimilation." The district court denied his request, he appeals, and we AFFIRM.

### Factual Background

Edgar Soto–Montero was born in Mexico to Mexican parents in 1976, but has lived in the United States for most of his life. In 1990 he became a permanent resident alien of the United States. That status was revoked in 1998 after he was convicted of possession of cocaine for delivery, possession of marijuana, and illegal possession of a gun. In 1999 he was deported to Mexico. He illegally returned later that year, and, in 2000, he was arrested again–this time by Wisconsin authorities for criminal damage to the property of his girlfriend. While he was out on bond, Soto–Montero was arrested for assaulting his youngest child's mother. He was subsequently convicted of battery, bail jumping and criminal trespass to land. He is currently incarcerated in Wisconsin on charges stemming from these arrests.

The INS became aware of Soto–Montero's illegal presence in the United States and he was indicted for illegally being in the United States, under 8 U.S.C. § 1326(a). Soto–Montero pleaded guilty and at sentencing sought a downward departure for his cultural assimilation. He argued that his illegal reentry was unique because he was returning to a nation that he has always considered home and that the consequences of his deportation to Mexico would be unusually onerous. Despite his lack of citizenship, Soto–Montero identifies himself as an American for several reasons, including his upbringing, his inability to speak Spanish, and his family ties. The district court considered various aspects of Soto–Montero's cultural ties to the United States, but eventually denied his request for a downward departure. At sentencing, however, the judge noted that

he would like to see the case appealed to further clarify the term "cultural assimilation." Soto–Montero was subsequently sentenced pursuant to U.S.S.G. § 2L1.2 to 77 months' imprisonment, to run concurrent with his Wisconsin sentence for property damage and assault. Soto–Montero appeals this sentence.

## Analysis

Soto–Montero argues that this court should vacate his sentence and remand for resentencing so that the district court may fully consider a downward departure under U.S.S.G. § 5K2.0 based on his cultural ties to the United States.[1] He contends that the sentencing court had more discretion than it appreciated when it considered his motion to depart downward, as evinced by the court's stated lack of understanding of the term "cultural assimilation." Prior to addressing the merits of Soto–Montero's appeal, we must first determine if we have jurisdiction to review the district court's sentencing decision.

Appellate courts do not have jurisdiction to review a district court's denial of a discretionary sentence departure under 18 U.S.C. § 3742(a). *See United States v. Crucean*, 241 F.3d 895, 898 (7th Cir.2001); *United States v. Johnson*, 227 F.3d 807, 816 (7th Cir.2000). However, if the district court refuses to grant a downward departure based on a legal determination concerning its authority to depart, that issue does "fall within the scope of § 3742(a)(2) and is thus reviewable." *Crucean*, 241 F.3d at 898 (citing *United States v. Poff*, 926 F.2d 588, 591 (7th Cir.1991) (en banc)). The only question, therefore, that we must answer in determining if our jurisdiction is proper is whether a decision not to award a downward adjustment under § 5K2.0 yields a sentence "imposed as a result of an incorrect application of the sentencing guidelines," 18 U.S.C. § 3742(a)(2), or if it falls within the district court's unreviewable discretion.

The Seventh Circuit has yet to address whether a sentencing court may consider "cultural assimilation" as a factor under § 5K2.0 as it relates to a defendant's culpability in committing an immigration offense under 8 U.S.C. § 1326(a). In *United States v. Gonzalez–Portillo*, 121 F.3d 1122 (7th Cir.1997), we held that deportable aliens convicted under 8 U.S.C. § 1326, and sentenced under U.S.S.G. § 2L1.2, were categorically not entitled to receive consideration for their deportable status at sentencing because that factor is already taken into account in the guidelines. *Id.* at 1125. *See also United States v. Bautista*, 258 F.3d 602, 605 (7th. Cir.2001). In Bautista, we reiterated this tenet but noted in dicta that the situation where a defendant seeks to have his sentence reduced due to the harshness of deportation differs from the situation where a defendant seeks to have his sentence reduced based on the impact his national identity has on his culpability in illegally returning to the United States. *Bautista*, 258 F.3d at 604 n. 2 (citing *United States v. Lipman*, 133 F.3d 726, 730–31 (9th Cir.1998)). Absent this distinction, *Gonzalez–Portillo* and *Bautista* would be controlling in this case, as Soto–Montero was convicted of a crime under 8 U.S.C. § 1326 and sentenced under U.S.S.G. 2L1.2, thereby denying the

---

1. Under U.S.S.G. § 5K2.0, a court may depart from the applicable guideline range if the court finds "that there exists an aggravating or mitigating circumstance of a kind or to a degree not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." *Id.* (quoting 18 U.S.C. § 3553(b)). Courts may depart under this guideline only to the extent that the "circumstance for departure is present to an unusual degree and distinguishes the case from the 'heartland' cases covered by the guidelines." U.S.S.G. § 5K2.0.

district court the discretion to even consider Soto–Montero's cultural assimilation. However, Soto–Montero argues that *Bautista* left the door open for criminal defendants to argue for a sentencing decrease under § 5K2.0 based on their cultural assimilation as it relates to the culpability of their offense of illegally returning to the United States. *See, e.g., Lipman*, 133 F.3d at 731 (holding that a sentencing court may depart on the basis of "cultural assimilation" in extraordinary circumstances considering that cultural ties to America could provide the motivation for a defendant's illegal reentry). Additionally, Soto–Montero argued both the harshness of his deportation and his "decreased culpability" at the sentencing hearing. We need not address whether *Bautista* opened that door on this appeal, however, because, even if we assume *arguendo* that the district court properly considered whether Soto–Montero's cultural assimilation decreased his culpability for sentencing purposes, the district court gave its full consideration and exercised its full discretion in denying Soto–Montero's request for a sentencing departure.

In exercising its discretion the district court considered several factors weighing in Soto–Montero's favor: his shared experiences with his local community; his national allegiance; his values; his family ties and close contacts; as well as his lack of memories, experience or connection of any kind with Mexico. [Blue App 22–23] Nevertheless, the court denied his motion finding that weighing against these factors were Soto–Montero's frequent run-ns with the law, which undermined his stated sharing of community values and national allegiance. The full consideration of Soto–Montero's status indicates that the district court fully contemplated his motion. Additionally, the court's decision not to depart was made after reviewing the presentence report which recognized the court's au-

thority to depart downward on the basis requested, but counseled against the departure due to the defendant's failure to become a productive member of society. Based on the foregoing we conclude that the district court did not fail to understand its authority to depart and exercised its discretion in denying Soto–Montero's motion. In reaching his decision, the sentencing judge did note the lack of clarity as to the exact definition of cultural assimilation and what factors should be considered, and even went so far as to request an appeal of his decision to the Seventh Circuit for clarification. This language, however, is not enough to indicate that the district court failed to understand that it had discretion to depart from the guidelines. A district court need not explicitly state that it had discretion to depart nor articulate its reasons for denying a departure from a sentence within the guidelines range. *See United States v. Atkinson*, 259 F.3d 648, 653 (7th Cir.2001); *United States v. Cureton*, 89 F.3d 469, 474 (7th Cir.1996) (holding that a district court is not obligated to state reasons for its refusal to depart from a sentence within the guideline range). In this case, the actions and language of the district court's sentencing decision demonstrate that the district court understood that it had full authority to depart if Soto–Montero's case fell outside the "heartland" of cases governed by the guidelines due to his cultural assimilation. We, therefore, have no jurisdiction to review the district court's discretionary determination.

## Conclusion

For the foregoing reasons we affirm the district court.